UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:13 CR 467 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| | ) | |
| DARNELL NASH, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 382(c)(1)(A)(i) for Immediate Compassionate Release. (ECF # 190). The Court appointed the Federal Public Defender, and they filed a Supplement to Defendant Nash's motion.[1] (ECF #193). The Government filed a Response in Opposition to Defendant's Motion. (ECF #196). Due to the seriousness of the claims made in the Motion, the Court conducted a status conference and ordered the parties to retrieve additional information from the Bureau of Prisons. Upon receipt this information, both parties filed supplemental briefs updating their respective arguments. (ECF #202, 209, 213, 215, 217, 218, 219). The Transgender Law Center also filed a Letter in support of Ms. Nash's request. (ECF #201).

Under the terms of the First Step Act, 18 U.S.C. §3582(c)(1)(A), an inmate may file a request with the court to modify an imposed term of imprisonment for "extraordinary and

---

[1] Ms. Nash is in the process of gender reassignment and, according to her filings, currently identifies as female. All pronouns referencing Defendant Nash will, therefore, be feminine.

compelling reasons." Prior to taking such action, however, the inmate is required to request that the Director of the Bureau of Prisons ("BOP") file a motion on his behalf, and to "fully exhaust[] all administrative rights to appeal a failure of the BOP to bring a motion." *Id.* Administrative rights are exhausted when the warden refuses to recommend that the BOP file a compassionate release motion with the court, and the prisoner appeals the denial using the BOP's Administrative Remedy program, or if there has been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Program Statement 1330.18; 28 C.F.R. 542(B), The Sixth Circuit has interpreted this to mean that the exhaustion requirement is satisfied thirty days after a warden receives a request by an inmate, regardless of whether any administrative appeals are available or have been pursued. *See, United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). This exhaustion requirement is "mandatory" if invoked by the government and is not subject to any "judge-made exceptions." *Alam*, 960 F.3d at 834. There are no equitable exceptions "to account for irreparable harm or futility," including in cases involving COVID-19. *Id.* at 835-36; *USA v. Minor*, Case No. 20-3467, at 3 (6th Cir. March 2, 2021). Ms. Nash filed a request for compassionate release with the Warden on January 5, 2021. As of the date of her counsel's most recent briefing, filed February 17, 2021, she had received no response to this request. As more than 30 days have passed since the request was made, this motion is properly before this Court.

In order to justify compassionate release a court must: (1) find that extraordinary and compelling reasons warrant a sentence reduction; and (2) consider the applicable §3553(a) factors. *See, United States v. Jones*, Case No 20-3701, at 9 (6th Cir., Nov. 20, 2020). The Sixth Circuit has recently stated that, following the passage of the First Step Act, the policy statements set forth in U.S.S.G. §1B1.13 are not "applicable" policy statements that court must consider in making a decision on a compassionate release motion brought directly by an inmate. *United*

States v. Elias, Case No. 20-3654 (6th Cir., January 6, 2021); Jones at 13; Minor at 2. Therefore, "[u]ntil the Sentencing Commission updates §1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a §3582(c)(1)(A) motion." Jones at 13. A "compassionate release decision is discretionary, not mandatory." Jones at 9; Cf. United States v. Curry, 606 F.3d 323, 330 (6th Cir. 2010).

Ms. Nash's pre-sentence report and most recent submissions indicate that she identifies as a transgender woman. (ECF #184). She began the medical transformation of gender reassignment approximately around the age of 18. She has had several surgeries and takes hormonal medication, but has not completed the process, at least in part because of the time she has spent in jail. (ECF #104). Because her reassignment is not complete, she has some female features but also retains some biologically male features. She is currently being housed at a male prison. Prior to sentencing she reported having a history of mental and emotional health issues arising from gender dysphoria, as well as multiple suicide attempts. She also reported that her gender identity made her the victim of discrimination and violence throughout her life. Following a sexual assault that occurred while she was in custody at Cuyahoga County Jail, she was diagnosed with Post-Traumatic Stress Disorder. All of this was known to the Court at the time of sentencing, however, when balanced with all of the other factors that must be considered under 18 U.S.C. §3553, failed to justify a downward departure in her sentence. The Court of Appeals reviewed whether Ms. Nash's gender dysphoria and desire to transition from male to female required a downward departure and determined that it did not. (ECF #128, 129). Her sentence was, therefore, affirmed. (Id.).

Ms. Nash now argues that because of her transgender status, the BOP has been unable to protect her from multiple instances of rape and sexual assault. It is an unfortunate truth that such

assaults can and do occur in prison, whether or not the victim is transgender. The BOP has procedures in place to to assist inmates who have suffered from such assaults, and, to the best of its ability, to protect especially vulnerable inmates from future assaults. Unfortunately, due to the constraints of the prison environment and the wide variety of people it must manage, these procedures are not fool proof. The BOP reports show that Ms. Nash reported several allegations of assault and rape, and that the BOP offered her access to medical and mental health care. The reports also show that the BOP investigated Ms. Nash's claims, some of which were substantiated and prosecuted,[2] and some which were not. Ms. Nash was recommended for cell placement only with inmates who did not have an "increased risk of sexual abusiveness," and for a greater level of supervision in work and education assignments. (ECF #213-2). She has been repeatedly placed in Special Housing Units ("SHU") as a means of protection, and has been transferred from facilities where she has alleged she was subject to abuse. She feels that these measures are punitive rather than protective, but they are both means by which the BOP attempts to ensure the safety of inmates with special security issues. Although she complains now that her risk is heightened due to her placement in a men's institution, the reports show that she previously asked to be transferred into a men's facility. (ECF #215-1).

There is no dispute that Ms. Nash's life has been negatively affected by the combination of her incarceration, her gender dysphoria, the state of her gender reassignment process, and other mental health issues. Unfortunately, however, this does not make her case so exceptional in the context of prison life that it compels a reduction in her sentence. Sadly, there are innumerable people in prison who suffer from mental health issues and emotional trauma, and there are a multitude of reasons that make some inmates more susceptible to abuse and assault. In addition, there are a sufficient number of inmates with gender identity disorder ("GID") that

---

[2] Ms. Nash claims that a guard was involved in one of the most egregious assaults against her. That guard has since been convicted and is awaiting sentencing.

the BOP has policy in place to manage the specific health and safety issues associated with this diagnosis.³ No person deserves to be raped or assaulted, and the pain and trauma caused by such acts are never intended as part of any sentence imposed by the Court. Nonetheless, the Court cannot simply release every prisoner who has suffered such an atrocity. The BOP uses what means it has available to provide as much security as possible to its inmates and staff, and to prevent violence within its institutions. When these measures fail, there are administrative procedures and other legal avenues by which those failures can be assessed and addressed.

Even if Ms. Nash's circumstances were so extraordinary and compelling as to justify a reduction in sentence, the Court must also balance all of the §3553 sentencing factors, including but not limited to, the nature and circumstances of the offense, the history and character of the defendant, the need for the sentence originally imposed, the protection of the community, the avoidance of unwarranted sentencing disparities, and all of the other considerations that went into the original sentencing decision. A fair balancing of the 18 U.S.C. §3553(a) factors, leads to the conclusion that under this unique set of circumstances, a reduction in sentence would not be appropriate.

---

³Ms. Nash argues that the BOP has not followed this policy in her case. It is not clear whether or when the application of this policy was requested or should have been triggered, or why this policy has not been followed. The BOP recognizes Ms. Nash as having gender dysphoria. However, BOP reports also indicate that she has not been consistent in her own assessment of her gender identity. In January of 2016, as part of her intake at FTC Oklahoma City, she underwent a mental health examination during which she "expressed confusion concerning the transfer to a male institution." She also stated: "I don't know how I identify. I have a lot going on right now." Later during the same interview she said she was transgender. The records from the mental health unit indicated that Ms. Nash previously stated, on August 20, 2015, that "[a]s of today, I do not identify with female gender identity." Bureau of Prisons records also show that she previously reported "feeling uncomfortable at a female institution and requested to be re-designated to a male institution." (ECF #215-1). It is unclear whether these statements had any effect on the application of the policy, or whether other factors may have come into play. In any event, Compassionate Release is not the appropriate means by which to address any alleged failure in the BOP's execution of its GID policy.

Ms. Nash is 37 years old. She pled guilty to involvement in a sophisticated and complex scheme involving wire fraud, mail fraud, aggravated identity theft, money laundering, and conspiracy to commit mail and wire fraud. (ECF #114). She was the leader of a scheme specifically targeting vulnerable individuals. There were over 50 identified individual victims, as well as a loss to Government assistance programs of over $361,000 in six states. This money was meant to assist needy families and unemployed, and instead was re-routed to the Defendants in this case. Ms. Nash has a long criminal history record of fraud and theft related crimes, as well as two failure to comply charges. At the time of sentencing, she also had pending charges in two other states. (ECF #104). She has never had legitimate employment. She has served less than half of her 175 month sentence. For these reasons and all of the considerations that were taken into account at Ms. Nash's original sentencing, the Court finds that the full sentence is sufficient but not greater than necessary to comply with the purposes of sentencing, taking into account the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, and the sentences available. Ms. Nash is a high risk for recidivism, has a long history of repeated and progressively complex crimes, and has not been deterred by prior sentences. Further, she targeted vulnerable victims for identity theft. Ms. Nash's specific vulnerabilities were taken into account in her original sentencing and in her prior post-conviction proceedings. The same considerations were reviewed on appeal and her sentence was upheld.

For purposes of this opinion, the Court considered all of Ms. Nash's filings and attachments, non-party filings offered on behalf of Ms. Nash, the Government's opposition(s), the plea agreement, and the record relating to her pre-sentence report and original sentencing. In addition it balanced all the factors set forth in 18 U.S.C. §3553(a). The unique combination of

factors at play in Ms. Nash's case do not support a sentence reduction in this case. For the reasons set forth above, the Court finds, in its discretion, under the totality of the circumstances, that the Defendant's Motions for Sentence Reduction should be DENIED. (ECF #190, 193, 209, 213). Defendant's Motion for Allowance of Time to Respond is GRANTED, and the response was considered. (ECF #210). IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
Senior United States District Judge

DATE: May 25, 2021